780 F.2d 1023
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)
JAMES M. THOMPSON, et al., Plaintiffs-Appellants,
v.
COMMONWEALTH OF KENTUCKY, DEPT. OF CORRECTIONS, et al.,
Defendants-Appellees.
 84-5521
 United States Court of Appeals, Sixth Circuit.
 11/7/85
 
 REMANDED
 W.D.Ky.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY
 Before: LIVELY, Chief Judge; CONTIE and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 On May 4, 1980, plaintiffs (residents of the Kentucky State Reformatory (KSR)) and defendants-appellees (officials of the Kentucky Department of Corrections) entered into a consent decree comprehensively addressing conditions of confinement at KSR and the Kentucky State Penitentiary. The decree was subsequently published in Kendrick v. Bland, 541 F.Supp. 21, 27-50 (W.D. Ky. 1981).
 
 
 2
 On May 26, 1983, plaintiffs filed a Motion for Specific Performance requesting that the district court order defendants to establish a four-year college Bachelor of Arts program at KSR by the fall semester of 1983 pursuant to Part 4 of the consent decree, which provides in pertinent part:
 
 4. PROGRAMS
 
 3
 . . . The programs currently offered will be maintained at least at their present level. These programs include, but are not limited to:
 
 
 4
 .............................................................
 
 
 5
 ...................
 
 
 6
 * * *
 
 Education
 
 7
 The academic program at both institutions includes specifically:
 
 
 8
 1) Title I--Education Program--jointly funded by federal and state agencies which provide an education program for the disadvantaged . . ..
 
 
 9
 2) Title IV A--Library Program . . ..
 
 
 10
 3) Programs of individualized instruction . . ..
 
 
 11
 4) Grades 8-12 educational program and GED (high school equivalency) testing program.
 
 
 12
 5) Night school--Basic Adult Educational Programs
 
 
 13
 6) Two year college level program which permits the accumulation of hours for the acquisition of an Associates Degree or toward the acquisition of a Bachelor's Degree
 
 
 14
 The defendants agree to establish a college level program which leads to the acquisition of a Bachelor's Degree.
 
 
 15
 No inmates shall be disqualified from an academic program, except for disruptive behavior in class or for violation of institutional rules . . ..
 
 
 16
 541 F.Supp. 29-30 (emphasis added as to those portions now in dispute).
 
 
 17
 The district court entered a memorandum of a conference held in chambers interpreting the relevant portion of the consent decree and then denied plaintiffs' motion. The district court's entire discussion of the issue follows:
 
 
 18
 As stated by the plaintiffs in their motion, a consent decree shall be construed as a contract for purposes of enforcement. United States v. ITT, Continental Bakeries, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). The construction and interpretation of an unambiguous contract is a matter of law for the court unless an ambiguity in the contract language exists. The preliminary question of whether an ambiguity exists is a question of law that may be resolved by the court. If this inquiry is negative, judgment shall be granted if the documents supporting the motion are undisputed and reveal that there is no question of intent. On this issue, neither party contends that any ambiguity exists and the court agrees. The only question remaining is what is the proper construction to be given the provision in dispute.
 
 
 19
 In the consent decree, the parties agreed to maintain the status quo as of May 4, 1980 regarding institutional programing. There is no contention that the defendants have failed to meet this requirement regarding college programing. The plaintiffs' argument, however, urges the court to impose an additional burden upon the defendants, that is, to afford inmates the opportunity to acquire a college bachelor's degree while incarcerated. A careful reading of the section above leads to an opposite conclusion. The decree provides only that defendants agree to '. . . establish a college level program which leads to the acquisition of a bachelor's degree [emphasis added].' The court finds that the college programing currently offered at the institution satisfactorily fulfills the parties' agreement as embodied in the consent decree requiring that defendants establish a college program which 'leads' to the acquisition of a bachelor's decree by prisoners at KSR. This language in the consent decree is not surplusage because it requires college level courses that permit an inmate to work towards earning a bachelor's degree when he leaves the institution. The court shall deny plaintiffs' (Elder) motion for specific performance that would require establishment of a full blown bachelor's degree program at KSR under this language in the consent decree.
 
 
 20
 Plaintiffs on appeal contend that the district court erred in its interpretation of the consent decree regarding a college degree program.
 
 
 21
 Plaintiff prisoners allege that the corrections department 'must establish a college program at KSR which will allow inmates to acquire a Bachelor's degree' in order to comply with the consent decree. (Plaintiffs' Memorandum in Support of Motion for Specific Performance.) Essentially, the plaintiffs argue that Item 6 of Part 4 of the consent decree, which described a '[t]wo year college level program which permits the accumulation of hours . . . toward the acquisition of a Bachelor's degree', merely sets out the status quo at the time the consent decree was entered. They assert that the next sentence, 'The defendants agree to establish a college level program which leads to the acquisition of a Bachelor's degree', must be interpreted to impose a further requirement, or else it is meaningless, mere surplusage.
 
 
 22
 The district court did not agree with plaintiffs' contention that the consent decree must be interpreted to require not merely an augmenting of the current college-level program at KSR but the establishment of a program through which inmates could acquire a bachelor's degree.
 
 
 23
 The district court's conclusion, rather, was that the current program at KSR permits prisoners to accumulate credits toward the ultimate acquisition of a bachelor's degree and that the language of the consent decree required nothing more. The district court found that the decree was unambiguous in respect to this conclusion and that the plaintiffs' claim was foreclosed by the plain meaning of the decree.
 
 
 24
 Item 6 of the decree provided for a 'two year college level program which permits . . . the acquisition of an Associates Degree or toward the acquisition of a Bachelor's Degree.' (Emphasis added.) The next sentence reflected defendants' agreement 'to establish a college level program which leads to . . . a Bachelor's Degree.' The latter does not limit the program to a two-year college level program, and it uses the words, 'leads to' the acquisition of a degree, instead of the words, 'toward' the acquisition of the degree. In the language introducing the provisions on education, the decree obligates the State to 'maintain' the programs described as being in existence (including that described in Item 6), while language which follows requires the State to 'establish' a program. Otherwise, the language appears to be substantially the same. Perhaps the implementing language in the second portion, which does not limit hours or courses to a two-year level, reflects the proper meaning of the decree in question, and it may be carried out in this way but this was not the basis chosen by the district court for its interpretation.
 
 
 25
 We believe the language is ambiguous and that it is therefore appropriate to determine the intent of the parties as to what was required to implement the 'college level program' aspect of the decree, which is properly construed as a contract or agreement in this circumstance.[1] United States v. ITT Continental Baking Co., 420 U.S. 223, 238 (1975). Accordingly, we remand this matter to the district court for further consideration of the proper meaning of the language in dispute in light of the circumstances at the time indicating the intent of the parties, and for a further definition of what 'college programming' is being offered as 'fulfilling the parties' agreement as embodied in the consent decree.'
 
 
 26
 Accordingly, we REMAND this case for the specific purposes indicated.
 
 
 27
 LIVELY, Chief Judge, concurring.
 
 
 28
 While I agree that the portion of the consent decree dealing with college level education is ambiguous, I find no support in the language of the decree for the contention of the plaintiffs-appellants that the corrections department 'must establish a college program at KSR which will allow inmates to acquire a Bachelor's Degree.' The only thing which the defendants agreed to do was to provide a college level program which leads to the acquisition of a Bachelor's Degree. There is quite a difference between a program which leads to the acquisition of a degree and one which allows inmates to acquire a degree. Further, the statement made at oral argument on behalf of the plaintiffs-appellants that KSR is required by the consent decree to permit prisoners to leave the prison and attend classes at the University of Louisville or other institutions of higher learning in the Louisville area is totally without support in the language of the consent decree.
 
 
 29
 The only question to be determined on remand is whether the provision by which the defendants agreed 'to establish a college level program which leads to the acquisition of a Bachelor's Degree' imposed any obligation on the corrections department to create any program beyond that already in place as described in subsection 6 of Part 4 of the consent decree, and if such an obligation exists, whether the current offerings satisfy that obligation.
 
 
 
 [1]
 It may be, of course, that the parties never reached any mutual accord as to the meaning of the sentences in question